Plaintiff was injured when her Chevrolet Tudor sedan automobile collided with a truck of defendant, then being driven by his employee, Leroy Crane, on U.S. Highway No. 80, eight miles west of the City of Minden, Louisiana, at about the hour of two o'clock A.M., November 1, 1937. She sues to recover damages for physical injuries and for the near demolition of the car. The car was traveling easterly and was being driven by a young man by the name of Lee D. Howell, Jr. On the front seat beside Howell was the plaintiff and to her right sat Solon Keith. The fourth member of the party, Miss Helen Irby, sat in the laps of plaintiff and Keith. The rear seat was unoccupied when the accident occurred. The truck was going westerly.
The highway at the locus of the accident consists of a concrete slab eighteen feet wide, bisected by the customary medial black line, on each side of which is a grassy surfaced dirt shoulder a few feet wide. The collision occurred in a broad curve, the convex side of which faces north.
Each side to this suit charges that the vehicle of the other crossed the black line and forced the collision; and each driver is charged in several respects with negligence and carelessness as the proximate cause of the collision, mainly, speeding and not maintaining a proper lookout.
Defendant is a non-resident of the State of Louisiana. A writ of attachment issued and movable property located in Webster Parish was seized thereunder. He was cited and served through the Secretary of State, pursuant to the provisions of Act 184 of 1932. Judgment in personam is prayed for.
Defendant excepted to the petition as disclosing neither a cause nor a right of action. The exceptions were overruled. They are not urged here. He also filed a motion to require plaintiff to elect whether she "stands on the allegations that defendant is a non-resident and absentee with process to be served thereunder as (is) provided by law; or to stand on the allegations asking for personal service and personal judgment as (is) provided for in the other recourse sought." This motion over plaintiff's objection was withdrawn. Thereafter defendant moved to dissolve the writ of attachment and to support the same, he alleged:
"That plaintiff, having availed himself of Act 86 of 1928 as amended by Act 184 of 1932 and accepted the Secretary of State as the duly appointed agent of the said Zack Brooks, and having cited him as such, thereby gaining personal jurisdiction as to your defendant, has thereby deprived himself of the right of an attachment on the grounds of non-residence; that the writ of attachment herein issued is also in violation of the constitutional rights of your defendant as set out in 14th Amendment, Section 1 in the Federal Constitution, and also as set out in Article 4, Section 2 of the Federal Constitution.
"That, in accordance with Act 220 Section 1, 1932, being Section 2139.1 of Revised [General] Statutes, plaintiff is specifically deprived of the right of attachment by this act."
The motion to dissolve was tried upon the face of the record, supplemented by a stipulation listing the items of damage sustained by defendant on account of the writ's issuance and levy, and the amounts thereof. The motion was overruled. Defendant then applied for order of suspensive appeal to this court which was also overruled. He thereupon applied to the Supreme Court for writs of certiorari, prohibition and mandamus directed to the judge of the lower court. This application was rejected by the high court on the ground that since appeal in the case properly lies to the Court of Appeal, Second Circuit, issuance of such writs, if right thereto existed, was the province of that court.
After trial of the case on its merits there was judgment in personam for plaintiff for $1,146 with recognition of the writ of attachment. Defendant prosecutes appeal to this court.
The motion to dissolve is strenuously urged and elaborately argued in this court. The conclusion we here reached on the merits of the case obviates the necessity of passing on the legal question specifically propounded in the motion. We are of the opinion that plaintiff was without a cause of action against defendant as a result of the unfortunate accident, and, this being true, of course, the writ of attachment should not have issued.
Of the five persons involved in and who witnessed or are supposed to have witnessed the accident, only three gave testimony in the case. Young Howell, the car driver, *Page 499 
died of injuries before reaching Minden for medical aid. Keith was a resident of the State of Arkansas at the time of the collision and when the case was tried. He appeared to testify at one or more fixings of the case but was not present when trial was had. The testimony of plaintiff and Miss Irby as to the cause of the collision is diametrically opposed to that of Crane, the truck driver.
The antecedent facts and history of the joy ride culminating in the tragedy that cost the life of young Howell and caused injury to his companions, are apropos of a discussion of the issues of the case.
Plaintiff had been estranged from her husband for four months at the time of the accident. In the afternoon of the day prior thereto, she drove from Minden to Taylor, Arkansas, and there contacted Solon Keith, a married man, whom she had known for two years. They journeyed back to Minden, arriving about eight thirty o'clock and stopped at a roadside tavern a short distance west of Minden. They had been there but a few minutes when young Howell and Miss Irby drove up in a car owned by the former's father. A trip to the State Fair, then in progress in Shreveport, thirty miles distant, was soon decided upon. Howell returned to his father the car in which he was riding and immediately thereafter the trip to the Fair, in plaintiff's car, was begun. The trip over was uneventful.
Plaintiff and Miss Irby both admit that while on the Fair Grounds each of them drank two bottles of beer. They deny that their escorts drank at all. Beyond this, they deny imbibing intoxicants. The party left the Fair Grounds about twelve thirty o'clock A.M. and stopped at a lunch stand in Bossier City, across the river from Shreveport, where coffee and sandwiches were served them. Here, Howell took the wheel for the assigned reason that he had not been drinking and was considered a safe driver. It was here that all four crowded into the front seat. The reason given by plaintiff why the entire party occupied the front seat is interesting. She said: "It was on account of the song; he was singing it so I insisted we all get on the front so he could sing it; it was very good song and he had a nice voice."
She also testified that with brief respites they sang loudly going to and returning from Shreveport.
A deputy sheriff of Webster Parish observed plaintiff and Keith eating in a restaurant north of Minden about eight thirty o'clock of the evening prior to the accident. A partly consumed pint bottle of whiskey was on their table. A drink was offered the deputy which he refused. This was immediately prior to the beginning of the drive to see the Fair.
Miss Irby testified that a minute or two before the accident plaintiff's car met a truck driving very rapidly but which passed them safely; that defendant's truck's lights were then in sight; that Howell at the time began to reduce the speed of the car; that she then observed that defendant's truck was "half way across the line on our side" and going "pretty fast"; that she warned Howell of the perilous situation and he replied that he was over as far as he could get without hitting the guard rail; that the car's right wheels were off of the pavement when the collision occurred.
Plaintiff's version of the facts of the accident is substantially agreed with that of Miss Irby. She testified in part as follows:
"Well, as we were coming on back we got out here close to McIntyre and I was kind of sleepy and after we got through singing, I must have dozed off, so I kind of looked up and about the time I looked up I saw a car coming and it was on the wrong side of the road. I said, `Lee D., the car is going to hit us, and pull over.' He said, `yes, that is what I was thinking'. He said, `That is about as far over as I can get'. About that time the car hit us * * *".
She did not see the truck which preceded defendant's, but says she awoke from a nap immediately after it passed. She recalled having heard Miss Irby say something to Howell about the position of defendant's truck on the highway.
Crane, the truck operator, had driven from El Dorado, Arkansas, some eighty miles from the site of the accident. He testified that he was driving at a speed not in excess of thirty miles per hour on his side of the road; that another truck going westerly was a short distance ahead of him; that when plaintiff's car met this truck he noticed that it pulled to its right side and off of the slab, which was just before it reached the guard rail on the south side of the highway. He then testified as follows, to-wit:
"Q. Then what happened? A. Well, he cut back in on the highway and the pavement seemed to be higher than the road, *Page 500 
than the shoulder, and when it cut back in he cut right into the back of my truck."
The first contact between the vehicles involved the left front wheel of the car and the left rear wheel and fender of the truck. The impact was so violent that the truck wheel was knocked rearward, the braking equipment so badly injured that it ceased to function, and the drive shaft was disengaged from and at the universal joint, that end falling to the pavement. The left front wheel of the car was torn loose from its attachments, the left fender crumpled and forced back against the hood, the left door completely torn away and other serious damage inflicted to the entire left side of the car. The bumper, however, strange to say, was uninjured.
Mechanics interrogated on the subject, accounted for the car's wheel being torn from its attachments without injury to the left end of the bumper, by saying that the wheel would have had to be at an angle to the left at time of contact; that when in this position the tire extends slightly beyond the bumper's end. This is a plausible explanation of this rather freakish situation and supports the truck operator's testimony when he says that the car while trying to resume its position on the pavement cut to its left and rammed the left rear wheel of the truck.
The superior weight of the testimony shows that when the drive shaft dropped to the pavement it made a scar thereon near the center of the north one-half of the road, and that the end of the shaft made a distinct scratch on the pavement from this point until the truck ran off of the highway. Had the truck been on plaintiff's side of the road to the extent necessary to ram the car, the marks made by the drive shaft would have been south of the black line.
We are not unmindful that it often happens when motor vehicles collide violently, freakish, inexplicable things occur. Notwithstanding this, we cannot perceive how plaintiff's car could have had its left side and wheel torn away, as was done, if the positions of the two vehicles at the time of the collision were as she contends. If the car had been proceeding in a straight course, as contended, and the truck had run into it at an angle or sideswiped it, there surely would have been signs of damage to other parts of the truck than the left rear wheel and fender; also damage to the car's bumper. On the contrary, the damage to both cars can be rationally accounted for if we accept the truck operator's version of the facts of the accident. The truck had a trailer upside down on its bed and when the car's wheel violently contacted the fender and wheel of the truck, this checked the car's momentum and caused its body to violently swing to its left against the truck and the bolsters of the trailer raked its side from front to rear. The car reacted, ran into the guard rail, rebounded and turned over.
The physical evidence in the case is so forceful that it removes practically all doubt that the truck was on its proper side of the highway when struck by the car. We are certain that the accident did not happen in the manner related by plaintiff and Miss Irby. The physical evidence, in our opinion, positively supports this conclusion.
Defendant pleaded and here argues that this party of young people was under the influence of liquor when the accident happened and were in that condition when all of them decided to occupy the front seat, or else this imprudent and dangerous action would not have been taken; that the crowded condition about the driver interfered with his ability, if sober, to safely operate the car and that this caused him to lose control and to drive into the truck. Of course, these are conclusions largely drawn from the character of the party and attendant circumstances which naturally cause the mind to think and wonder. There might be more verity in the conclusions than is proven. It is not always necessary in a civil case to establish why a person has committed an act producing injury, if such person is in law responsible for such act. The act and the injury must be shown.
We are unconvinced, after a close study of the record, that the accident occurred because of any negligence of defendant's driver.
Defendant prays that the demand of the plaintiff be rejected and that the writ of attachment be dissolved with damages. We are relieved of the task of having to fix the damages to defendant resulting from the issuance and levy of the writ upon and detention of his property. In a stipulation between counsel, actual damages are admitted in these respects, viz.: *Page 501 
Premium on bond to release attachment ................. $ 90.00 Attorneys' fee for services rendered in dissolving the writ ............................................ 250.00
Loss sustained by detention of truck .................. 150.00 ------ Total ....................................... $490.00
For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside, and there is now judgment in favor of defendant, rejecting the demand of plaintiff, dissolving and annulling the writ of attachment and dismissing her suit.
It is further ordered, adjudged and decreed that defendant, Zack Brooks, do now have and recover judgment against plaintiff, Grace Merritt Roper, in the sum of Four Hundred Ninety and no/100 ($490) Dollars, and costs of this suit.
DREW, J., recused.
 On Rehearing.